190 P.3d 905

**Kevin PIRO, Petitioner–Appellant,**

**v.**

**STATE of Idaho, Respondent.**

**No. 33409.**

Court of Appeals of Idaho.

April 25, 2008.

Review Denied Aug. 14, 2008.

Greg S. Silvey, Kuna, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ralph R. Blount, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

Kevin Piro appeals from the district court's order dismissing his application for post-conviction relief. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Early in 2001, Piro was taken into custody for questioning regarding an attempted lewd conduct. Piro was placed in an interrogation room at the police station and questioned by two officers. After questioning Piro for approximately an hour, the officers left the room and returned with a bottle of water, a pencil, and paper. The officers left the room again so that Piro could complete a witness statement. When the officers returned to the interrogation room, they told Piro to leave the water bottle, placed him under arrest for the attempted lewd conduct, and took him to a holding cell.

The officers returned to the interrogation room and collected the bottle of water from which Piro had been drinking. The officers submitted the bottle for DNA testing, and once Piro's DNA sample was obtained, it was submitted to a national database. Piro's DNA sample came back as a match with a sample taken from an unsolved rape case that was approximately one year old. Based on the DNA match, Piro was charged with rape and burglary. He filed a motion to suppress the DNA evidence obtained from the water bottle, arguing primarily that the evidence was obtained unlawfully because the officers had not first obtained a detention warrant pursuant to I.C. § 19–625. The district court denied Piro's motion, and a jury found him guilty of both the rape and burglary charges. Piro appealed the denial of his motion to suppress. This Court affirmed Piro's judgment of conviction, holding that a detention warrant was not required under the statute because Piro was already legally detained. State v. Piro, 141 Idaho 543, 546, 112 P.3d 831, 834 (Ct.App.2005).

Piro filed a pro se application for post-conviction relief and was appointed counsel. After a motion for summary dismissal by the state and a response by Piro's post-conviction counsel, the district court held an evidentiary hearing. The district court began by listing the many claims in Piro's pro se application, but Piro presented evidence on only three issues: ineffective assistance of trial and appellate counsel based on his attorneys' failure to argue that the DNA evidence obtained from the water bottle should have been suppressed on Fourth Amendment grounds; ineffective assistance of trial counsel for his attorney's failure to communicate; and ineffective assistance of trial counsel for his attorney's failure to communicate a plea offer. At the hearing on the post-conviction application, Piro and his trial attorney both testified. When Piro attempted to testify that his attorneys were ineffective for failing to argue the suppression of the DNA evidence on Fourth Amendment grounds, the state objected and the district court determined that, based on this Court's opinion in Piro's direct appeal, the issue was moot. The district court dismissed Piro's failure to communicate and failure to communicate the plea offer claims. Piro appeals.

## II.

## STANDARD OF REVIEW

A claim of ineffective assistance of counsel may properly be brought under the post-

conviction procedure act. *Murray v. State,* 121 Idaho 918, 924–25, 828 P.2d 1323, 1329–30 (Ct.App.1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); *Hassett v. State,* 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct.App.1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon,* 114 Idaho at 761, 760 P.2d at 1177. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Howard v. State,* 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct.App.1994).

## III.

## ANALYSIS

### A. Issues on Which No Evidence was Presented to the District Court

■ Piro's application for post-conviction relief contains numerous claims. Piro's brief to the district court, written by his post-conviction counsel, includes only two issues— whether Piro received ineffective assistance of counsel for his trial and appellate attorneys' failure to argue the suppression of the DNA evidence on Fourth Amendment grounds and whether Piro's trial counsel was ineffective for failing to communicate an alleged plea offer. On appeal, Piro's pro se appellate brief contains all the claims from his application, but Piro's supplemental brief and reply brief, both written by post-conviction counsel, address only suppression of the evidence on Fourth Amendment grounds. The state asserts that Piro's allegations in

his application and pro se brief were abandoned and should not be considered for the first time on appeal because Piro did not present evidence regarding these claims to the district court at his evidentiary hearing and, therefore, the district court did not address them. Piro's reply brief does not respond to the state's contention that these claims should not be considered on appeal.

At the beginning of Piro's hearing on his post-conviction application, the district court stated:

Well, the court will note that the defendant has alleged ineffective assistance of counsel: That he argues that he was denied his right to confront the accuser because she was only present when she testified. He has asserted poor cross-examination by defense counsel. Not making a clear record. That his intent was not proven. That there was poor communication by counsel with the defendant. That the defense conspired with the prosecution. That the defendant only talked to his client by phone after the first meeting, which occurred at the jail. That he had sent conflicting letters, and that they were conflicting because he feared that they would be intercepted. And that the defense failed to file a motion for reduction of sentence.

Defense counsel and the court failed to disqualify the public defender. The sentence was too harsh. That a public trial was denied because the public did not attend. That the court erred in failing to grant the defendant's Rule 29 motion. That the evidence was insufficient to support the verdict. That defense counsel was ineffective in not raising proper objections. That the defendant was unfairly cross-examined by the State. And that there was prosecutorial misconduct.

Defendant has also raised, once again, issues relating to the obtaining of the DNA evidence arguing that appropriate arguments were not made with regard to suppression.

Briefing has been filed. Parties have indicated that they are in fact prepared to proceed in this matter.

Other than precluding testimony on Piro's claim that his attorneys failed to argue Fourth Amendment grounds for the motion to suppress, at no point did the district court attempt to prohibit Piro from presenting evidence on any of these other claims. However, Piro presented no evidence or argument regarding the majority of the claims as framed by the district court.

In the order dismissing Piro's post-conviction application after the evidentiary hearing, the district court began by stating:

> The court now rules on the only two issues presented at trial, ineffective assistance of counsel based on [Piro's] assertion that his attorney failed to advise [Piro] of a plea offer from the State and ineffective assistance of counsel based on [Piro's] assertion that his attorney only met with him once in person at the jail, with the remaining issues all having been dismissed as being without merit.

This statement by the district court confirms that Piro presented testimony on only two issues at his post-conviction hearing. Additionally, Piro's supplemental brief and reply brief on appeal, both prepared by his post-conviction attorney, argue only that Piro received ineffective assistance of counsel because his trial and appellate attorneys failed to argue Fourth Amendment grounds for the suppression of his DNA evidence. Therefore, we will not address Piro's claims raised in his application that were not preserved for appeal having failed to present evidence on them before the district court at the hearing provided on his application.

**B. Suppression of the Evidence**

■ Piro argues that he received ineffective assistance of trial and appellate counsel because neither attorney argued that the DNA evidence obtained from the water bottle should have been suppressed on Fourth Amendment grounds. The state counters by arguing a number of different theories, including that Piro had no reasonable expectation of privacy in the water bottle and that he abandoned it.

■ In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted incompetent performance. *Boman v. State,* 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct.App.1996). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the *Strickland* test. *Boman,* 129 Idaho at 526, 927 P.2d at 916.

In this case, Piro is arguing he received ineffective assistance of counsel for his attorneys' failure to argue Fourth Amendment grounds on his motion to suppress. Therefore, a conclusion that the motion would have been denied and the appeal affirmed is determinative of Piro's ineffective assistance of counsel claim.

■ The Fourth Amendment prohibition of unreasonable searches protects from governmental intrusion only those places and things in which an individual has a legitimate expectation of privacy. *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1740–41, 80 L.Ed.2d 214 (1984); *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *State v. Morris,* 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct. App.1998). A legitimate expectation of privacy requires that an individual, by his or her conduct, has exhibited a subjective expectation of privacy in the searched premises or the item seized and that the expectation is objectively reasonable. *See generally Smith,* 442 U.S. at 740, 99 S.Ct. 2577; *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *United States v. Taketa,* 923 F.2d 665, 669 (9th Cir.1991); *State v. Shearer,* 136 Idaho 217, 222, 30 P.3d 995, 1000 (Ct.App.2001). Because there can be no reasonable expectation of privacy in "[w]hat a person knowingly exposes to the public," *Katz,* 389 U.S. at 351, 88 S.Ct. 507, it has been held that individuals have no expectation of privacy in many aspects of their physical appearance. *See, e.g., United States v. Mara,* 410 U.S. 19, 21–22, 93 S.Ct. 774, 775–76, 35 L.Ed.2d 99 (1973) (no expectation of privacy in a person's handwriting); *United*

*States v. Richardson,* 388 F.2d 842, 845 (6th Cir.1968) (ultraviolet examination of the defendant's hands was not a search); *United States v. Holland,* 378 F.Supp. 144, 155 (E.D.Pa.1974) (holding that a dental examination to determine whether the defendant was missing a tooth did not constitute a search); *State v. Downes,* 57 N.C.App. 102, 291 S.E.2d 186, 188–89 (1982) (no Fourth Amendment violation to remove arm and head hairs from a defendant because those personal traits are exposed to the public).

In addition to aspects of physical appearance, the Idaho appellate courts have determined that individuals lacked reasonable expectations of privacy in other situations. *See, e.g., State v. Donato,* 135 Idaho 469, 474, 20 P.3d 5, 10 (2001) (holding that there was no reasonable expectation of privacy in garbage placed on the curb for collection); *State v. Wilkins,* 125 Idaho 215, 222, 868 P.2d 1231, 1238 (1994) (concluding that, despite a request that officers turn off a tape recorder in the interrogation room so the defendant could speak to his parents in private, there was no objectively reasonable and justifiable expectation of privacy in his conversation); *State v. Oakley,* 119 Idaho 1006, 1008, 812 P.2d 313, 315 (Ct.App.1991) (holding that there was no objectively reasonable expectation of privacy in electrical usage records obtained from the power company).

Several cases that are factually similar to Piro's involving motions to suppress based on Fourth Amendment violations have been decided based upon both the lack of a reasonable expectation of privacy and abandonment. *See, e.g., Commonwealth v. Ewing,* 67 Mass.App.Ct. 531, 854 N.E.2d 993 (2006), *aff'd,* 449 Mass. 1035, 873 N.E.2d 1150 (2007). In *Ewing,* the defendant was arrested based on an arrest warrant for charges of assault and battery, charges unrelated to a rape it was believed Ewing may have committed. After arrest, Ewing was questioned about the assault and battery charges, during which time the police provided him with a meal, a soda with a straw, and several cigarettes. Ewing was returned to his cell and did not attempt to take the straw or the cigarette butts. The officers collected the straw and the cigarette butts and submitted

them for DNA evidence in an attempt to link Ewing to the rape, which was approximately ten years old. The court held that Ewing had no reasonable expectation of privacy in the cigarette butts he voluntarily abandoned as trash. *Id.* at 1001. *See also Commonwealth v. Rice,* 441 Mass. 291, 805 N.E.2d 26, 33 (2004) (holding that a defendant in custody had no reasonable expectation of privacy in the bed sheets and prison uniform owned by the county, and any rights he may have had were abandoned when he surrendered the items for laundering); Elizabeth E. Joh, *Reclaiming "Abandoned" DNA: The Fourth Amendment And Genetic Privacy,* 100 Nw. U.L.Rev. 857, 868 (2006) (stating that "no court has held police collection of abandoned DNA to be illegal"). Additionally, the *Ewing* court determined that Ewing's claim that the evidence must be suppressed as the product of an illegal ruse was without merit because there was no evidence that Ewing was coerced. *Ewing,* 854 N.E.2d at 1001.

In another factually similar case, the Massachusetts Supreme Court reached the same result without relying on abandonment. *See Commonwealth v. Bly,* 448 Mass. 473, 862 N.E.2d 341 (2007). In that case, Bly, in jail on an unrelated crime, voluntarily met with officers and was questioned regarding a murder. Bly was given several cigarettes by the officers and drank from a bottle of water, also provided by the officers. When Bly was asked to submit to a blood test in order to gain a DNA sample, he refused. After Bly left the butts and bottle in the interview room, the officers collected them for DNA sampling, which eventually led to Bly's conviction on the murder charge. On appeal, the court affirmed Bly's conviction stating that "our conclusion that Bly had no subjective expectation of privacy is compelled not by a finding that he legally abandoned them as much as it is by his wholesale failure to manifest any expectation of privacy in the items whatsoever." *Id.* at 357.

Piro asserts he had maintained a reasonable expectation of privacy in the water bottle because he did not throw it way; he held it while drinking from it; and he placed it on the table, as opposed to handing it back to the officers or offering to share it, while he

was not drinking from it. Piro implores this Court to review the video of the interview, and this Court has complied with Piro's request.

As the district court noted in its order denying Piro's motion to suppress, "Piro had been in the system before. He cannot reasonably argue that he had any legitimate expectation of privacy in a bottle of water provided by the police while he was in custodial interrogation." Therefore, much like the defendant in *Rice* who maintained no reasonable expectation of privacy in the bed sheets and prison uniform provided by the authorities, here Piro had no legitimate subjective expectation of privacy in the water bottle and his actions on the video do not show otherwise. Although Piro was asked to leave the bottle on the table, he was not holding the bottle in his hand when this occurred. Furthermore, even someone new to the system would not reasonably believe that he could permanently retain possession of a used water bottle while incarcerated in jail.

We find *Wilkins* to be instructive regarding the objective prong of the expectation of privacy test. Even though Wilkins asked the officer to turn off the tape recorder on the table in the interrogation room—thereby demonstrating his subjective expectation of privacy in the conversation—this Court determined that he maintained no objectively reasonable expectation of privacy because the conversation took place in an interrogation room at the jail. *Wilkins*, 125 Idaho at 222, 868 P.2d at 1238. In part, this Court's decision in *Wilkins* relied on the government's interest in maintaining security and order in detention facilities. *Id.* That same concern relating to security and order in detention facilities exists in this case as well. In addition to his failure to demonstrate a subjective expectation of privacy, Piro has not demonstrated an objective expectation of privacy either. It would be both disorderly and potentially unsafe to allow suspects to transport items from an interrogation room to a holding cell. Piro's claim of ineffective assistance of counsel based on his attorneys' failure to argue that the DNA evidence should be suppressed on Fourth Amendment grounds due to his reasonable expectation of privacy in the water bottle fails because his motion, and any appeal therefrom, would not have been successful if brought. Because we conclude that Piro had no reasonable expectation of privacy in the water bottle, we need not address whether he abandoned the bottle.

■ However, our inquiry does not end here. On appeal Piro also argues that the issue in his case is not whether he had a reasonable expectation of privacy in the water bottle, but whether he had a reasonable expectation of privacy in his genetic identity taken from the DNA testing of the water bottle. Piro bases his claim regarding an expectation of privacy in his genetic identity on DNA indexing cases. Thus, he maintains that, even if the police were allowed to gather the water bottle, they were not permitted to test it for Piro's DNA without securing a warrant.

We first must address the procedural posture of Piro's case. Piro filed a post-conviction application alleging that his attorneys were ineffective for failing to argue, in part, that he had a reasonable expectation of privacy in his genetic identity taken from his DNA on the water bottle. Therefore, we begin our inquiry into this claim by determining whether Piro has shown that his attorneys performed deficiently. *See Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65;

■ Although the failure to advance an established legal theory may result in ineffective assistance of counsel under *Strickland*, the failure to advance a novel theory will not. *Haight v. Commonwealth*, 41 S.W.3d 436, 448 (Ky.2001). *See also Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir.1999) (stating that only in a very rare case will counsel's performance be determined to be ineffective for failing to make an objection that would have been overruled under then-prevailing law); *Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir.1997) (holding that there is no general duty on behalf of counsel to anticipate changes in the law and that counsel is not ineffective for failing to raise a claim that courts have repeatedly rejected); *Alvord v. State*, 396 So.2d 184, 191 (Fl.1981) (holding that the ineffectiveness of appellate

counsel cannot be based upon the failure of counsel to assert a theory of law which was not at the time of appeal fully articulated or established in the law). Based on the reasoning in this line of cases, we conclude that it was not deficient performance of trial or appellate counsel to fail to argue for a novel theory in an undeveloped area of law.

DNA indexing statutes have been enacted in all fifty states. The indexing statutes require felons convicted of certain crimes to provide DNA samples so their genetic identity can be recorded in a national database. Although the scope of these DNA indexing statutes varies, constitutional challenges brought against these statutes uniformly have been rejected. *In re Lakisha M.*, 227 Ill.2d 259, 317 Ill.Dec. 690, 882 N.E.2d 570, 575 (2008).

Some courts have held that the use of DNA for identification purposes only does not infringe on a privacy interest in one's genetic identity because the DNA is not being used to reveal personal information. *See State v. Athan*, 160 Wash.2d 354, 158 P.3d 27, 34 (Wa.2007); *see also State v. Hauge*, 103 Hawai'i 38, 79 P.3d 131, 145–46 (2003) (rejecting a parade of horribles argument where DNA is being used for identification purposes only). In *Athan*, Seattle police created a ruse in order to follow a lead on an unsolved rape and murder case that was twenty years old. The police created a letter that purported to be from a law firm asking Athan whether he wanted to participate in a class action suit. The letter was mailed to Athan in New Jersey and included an envelope in which Athan could mail his response. When the officers received Athan's response, they submitted the return envelope for DNA testing. Athan's DNA was recovered from the dried saliva that had adhered to the return envelope when he had licked it to close it before mailing it back to the officers. Athan's DNA matched a sample recovered from the victim, and Athan was found guilty of second degree murder. On appeal, the American Civil Liberties Union (ACLU) submitted an amicus brief on Athan's behalf arguing that Athan maintained a privacy interest in the DNA itself. The ACLU reasoned that, because DNA has the potential to reveal a vast amount of personal information—including medical conditions and familial relations—Athan maintained an expectation of privacy in his genetic identity. Athan also argued that the collection and analysis of his DNA was an unreasonable search under the Fourth Amendment. The Washington Supreme Court acknowledged these concerns, but concluded that the concerns were not justified in Athan's case because his DNA was used solely for identification purposes. *Athan*, 158 P.3d at 34. The Court analogized Athan's case to situations where someone spits on the sidewalk or leaves a cigarette butt in an ash tray and concluded that Athan retained no reasonable expectation of privacy in his saliva. *Athan*, 158 P.3d at 33–34. The court concluded that "there is no subjective expectation of privacy in discarded genetic material just as there is no subjective expectation of privacy in fingerprints or footprints left in a public place." *Id.* at 37.

The parties have not cited and this Court has found no case holding that a reasonable expectation of privacy should be determined by a suspect's desire to keep his or her genetic identity private. Apart from *Athan*, all cases that are factually similar to Piro's address only whether a suspect had a reasonable expectation of privacy in the *item* from which the DNA was obtained. *See, e.g., Bly*, 862 N.E.2d at 356–57 (framing the issue as whether defendant had a reasonable expectation of privacy in cigarette butts and water bottle); *Ewing*, 854 N.E.2d at 1001 (analyzing ... cigarette butts.) Some appellate decisions analyzing the constitutionality of statutes authorizing the collection of blood samples or cheek swabs from offenders for inclusion in a DNA databank do suggest there may be a privacy interest in the information that DNA testing discloses, *e.g., United States v. Weikert*, 504 F.3d 1 (1st Cir.2007); *Nicholas v. Goord*, 430 F.3d 652 (2d Cir.2005), but we have found none that held the warrantless DNA testing to be unconstitutional.

◼ The value of DNA evidence not only convicts the guilty, it has also freed individuals who were wrongly convicted and were

innocent. *See People v. Garvin,* 219 Ill.2d 104, 301 Ill.Dec. 423, 847 N.E.2d 82, 92 (2006) (noting that "our appellate court as well as courts in other jurisdictions have variously found that ·the main purpose of DNA sampling is to absolve innocents, identify the guilty, deter recidivism by identifying those at a high risk of reoffending, or bring closure to victims"). We are cognizant that DNA evidence is powerful and that technology is constantly improving and changing the way law enforcement employs new DNA technology. We also recognize that none of the above-referenced decisions from other jurisdictions bind Idaho courts. However, given the procedural posture of Piro's case and the existing case law contrary to his claim, it cannot be said that Piro received ineffective assistance of counsel for his attorneys' failure to argue that his DNA evidence should have been suppressed based on his expectation of privacy in his genetic identity. Because Piro has not shown deficient performance by his counsels' failure to present a novel argument that has no support in the existing law, he has not met his burden under the first prong of the *Strickland* standard.

## C. Failure to Communicate and Failure to Communicate a Plea Offer

Piro alleges that· he received ineffective assistance of counsel because his trial attorney failed to meet and communicate with him about his defense and failed to communicate a plea offer made by the state. On both claims, the state counters by arguing that the district court correctly applied the law to the facts in concluding that Piro failed to meet his burden by a preponderance of the evidence.

In order to prevail in a post-conviction proceeding, the applicant must prove the allegations by a preponderance of the evidence. I.C. § 19–4907; *Stuart v. State,* 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State,* 118 Idaho 65, 794 P.2d 654 (Ct.App.1990). The credibility of the witnesses, the weight to be given to

their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State,* 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct.App.1988). We exercise free review of. the district court's application of the relevant law to the facts. *Nellsch v. State,* 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct.App.1992).

### 1. Failure to communicate

After an evidentiary hearing on Piro's claim of ineffective assistance of counsel for his attorney's alleged failure to meet and communicate with him, the district court concluded:

> [Piro] argued his trial counsel, ... only met with him one time· at the jail to discuss his case, and that he never met with anyone else from the · Ada County Public Defender's Office, and therefore, received ineffective assistance of counsel. However, [Piro] admitted under oath on cross examination that he did in fact meet with [his trial counsel] more than once and that he met with· the investigator from the Ada County Public Defender's Office on at least one occasion.

> [Piro's trial counsel] had a large number of documents and files on the stand, and testified under oath that he personally met with [Piro] quite a few times in person at the jail, as well as in the holding cell at the courthouse. [Trial counsel] also testified he spoke with [Piro] many times over the phone. The court finds [Piro] clearly failed to show his attorney's performance was deficient, and therefore, failed to meet his burden of proof with regard to that issue. The court finds that even had [Piro] shown his attorney's performance was deficient, he did not present any evidence, in any form, to show how he was prejudiced in his criminal defense.

The district court's findings of fact are not clearly erroneous, and given the strong evidence against Piro, it is unlikely that had his trial counsel met or communicated more with him, the outcome of Piro's case would have been different. Therefore, we conclude that the district court correctly dismissed Piro's claim of ineffective assistance of trial counsel

based on his attorney's alleged failure to communicate with him.

## 2. Failure to communicate a plea offer

Piro asserts that the state offered his trial attorney a plea offer and that his attorney provided ineffective assistance by failing to inform him of the offer. The district court, with regard to the alleged plea offer, stated:

> The court does not find [Piro's] testimony with regard to this issue to be credible. [Trial counsel] testified that he does not recall a plea having ever been offered to [Piro]. He testified that the statement that was made by the State at the pre-trial conference was that "if" there had been an offer, it was rejected. [Trial counsel] further testified as to the general practice of when and how an offer would be made in the usual life of a criminal case, but that it had not occurred in Mr. Piro's case. [Trial counsel] also stated under oath that he did not inquire extensively of the State as to a plea offer because his client told him he was innocent and that he wasn't going to plead guilty. At the close of his testimony under oath, [trial counsel] stated again that he recalls no plea offer being made in [Piro's] case.
>
> The court finds [Piro] has failed to show he received ineffective assistance of counsel because the court believes [Piro] probably heard the State use its usual pre-trial conference language that if any offers had been made, they were rejected, but that no offer was actually extended to counsel for [Piro] in this case.
>
> Furthermore, the court also notes [Piro] stated under oath that he would not have pled guilty to rape because he was only guilty of masturbation. This is entirely different from his testimony at trial where he testified that he had consensual sex with the victim, testimony the jury clearly did not believe. As to a plea offer that, according to his testimony, he would not have taken for anything more than masturbation, the court finds the State clearly would not have extended such a plea in this case.

Many jurisdictions recognize a claim of ineffective assistance of counsel where an attorney fails to convey a plea offer to the defendant. *See, e.g., Pham v. United States,* 317 F.3d 178, 182 (2d Cir.2003); *United States v. Blaylock,* 20 F.3d 1458, 1466 (9th Cir.1994); *Johnson v. Duckworth,* 793 F.2d 898, 902 (7th Cir.1986); *United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 438 (3d Cir.1982); *Cottle v. State,* 733 So.2d 963, 965–66 (Fla.1999); *Lloyd v. State,* 258 Ga. 645, 373 S.E.2d 1, 3 (1988); *Commonwealth v. Copeland,* 381 Pa.Super. 382, 554 A.2d 54, 60–61 (1988); *Ex parte Wilson,* 724 S.W.2d 72, 74 (Tex.Crim.App.1987); *State v. James,* 48 Wash.App. 353, 739 P.2d 1161, 1166–67 (1987). In order to prove the prejudice prong of the *Strickland* test for ineffective assistance of counsel where counsel fails to inform the defendant of a plea offer, the applicant must prove there was a reasonable probability he or she would have accepted the offer. *See, e.g., Blaylock,* 20 F.3d at 1466–67 (9th Cir.1994); *United States v. Day,* 969 F.2d 39, 45 (3d Cir.1992).

In this case, the district court concluded that Piro's testimony regarding an alleged plea offer was not credible and that Piro would not have accepted a plea offer if it had been made by the state and conveyed to him by his attorney. The district court's findings of fact regarding this issue are not clearly erroneous. Therefore, we conclude that the district court correctly denied Piro's claim of ineffective assistance of counsel for his attorney's alleged failure to communicate a plea offer.

## IV.

## CONCLUSION

Piro failed to present argument or evidence before the district court on the majority of his claims. Therefore, we affirm the denial of those claims. Piro did not have a reasonable expectation of privacy in the water bottle he was given during custodial interrogation. Further, his attorneys were not deficient for failing to argue that the DNA evidence obtained from the bottle should have been suppressed on Fourth Amendment grounds. Finally, we conclude that the district court correctly denied Piro's claims of ineffective assistance for his counsel's alleged

failure to communicate and failure to communicate a plea offer. Therefore, the district court's order dismissing Piro's application for post-conviction relief is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge GUTIERREZ and Judge LANSING concur.